IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHAUN S., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:17-cv-1790-BN |
| | § | |
| NANCY A. BERRYHILL, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Shaun S. seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons explained below, the hearing decision is affirmed.

## **Background**

Plaintiff alleges that he is disabled as a result of a left leg injury, knee pain, depression, blindness, dizzy spells, shortness of breath, uncontrollable bowel movements, leg numbness, back problems, and spitting up blood. *See* Dkt. No. 13 (Administrative Record ["Tr."] at 197-206, 226). After his applications for disability insurance benefits and supplemental security income ("SSI") benefits were denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). That hearing was held on April 5, 2016. *See id.* at 36-61. At the time of the hearing, Plaintiff was 38 years old. He has a high school equivalency diploma and past work experience as an assistant chef, material handler, packer, parts delivery

driver and remodeler. Plaintiff has not engaged in substantial gainful activity since April 1, 2011.

The ALJ found that Plaintiff was not disabled and therefore not entitled to disability or SSI benefits. *See id.* at 10-20 (ALJ Decision). Although the medical evidence established that Plaintiff suffered from status post tendon repair to the left lower extremity with foot drop, cannabis disorder, personality disorder, major depressive disorder, anxiety disorder, arthritis of the lumbar spine, chronic pain of the leg, knee and back, and obesity, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. The ALJ further determined that Plaintiff had the residual functional capacity to perform a limited range of sedentary work, but could not return to his past relevant employment. Relying on a vocational expert's testimony, the ALJ found that Plaintiff was capable of working as a document preparer, touch-up screener inspector/tester, and stem mounter -- jobs that exist in significant numbers in the national economy.

Plaintiff appealed that decision to the Appeals Council. The Council affirmed.

Plaintiff then filed this action in federal district court. Plaintiff contends that the hearing decision is not supported by substantial evidence and results from reversible legal error. More particularly, Plaintiff argues that: (1) the ALJ erred in failing to properly account for Plaintiff's moderate deficiencies in concentration, persistence or pace in the residential functional capacity finding or in the hypothetical questions to the vocational expert; (2) the ALJ's finding the Plaintiff could perform work involving

two hours of standing or walking during an eight-hour work day is not supported by substantial evidence; and (3) the ALJ's finding the Plaintiff could perform work available in the national economy is not supported by the evidence.

The Court determines that the hearing decision must be affirmed in all respects.

**Legal Standards**

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether Commissioner applied the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm

only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

"In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007).

The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 448. A finding that the

claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show

that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

I.  The ALJ properly accounted for Plaintiff's mental limitations.

Plaintiff contends that the ALJ failed to properly account for his moderate deficiencies in concentration, persistence, or pace in either the residual functional capacity ("RFC") finding or in the hypothetical questions to the vocational expert ("VE"). The Commissioner responds that the ALJ properly accounted for Plaintiff's moderate limitations in concentration, persistence, or pace by limiting Plaintiff to understand, carry out, and remember detailed, but not complex, tasks and instructions.

During the RFC evaluation, an ALJ must conduct a function-by-function assessment based on exertional and nonexertional capacity. *See* SSR 96-8p, 1996 WL 374184. As with exertional capacity, nonexertional capacity is expressed in work-related functions. *See id.* Work-related mental functions and activities include the abilities of: (1) understanding, remembering, and carrying out instructions; (2) using judgment in work decisions; (3) responding appropriately to supervision and peers, and (4) dealing with changes in a routine setting. *See id.*

But the function-by-function assessment does not require an exhaustive discussion of each work-related mental activity as long as it is considered in the ALJ's analysis. *See Haynes v. Colvin*, No. 6:12-cv-330-WSS, 2015 WL 3964783, at *5 (W.D. Tex. June 29, 2015) (citing *Walton v. Astrue*, No. 3:10-CV-815-D, 2011 WL 195975, at

9-10 (N.D. Tex. Jan. 20, 2011)). "[E]ven if the ALJ fails to conduct a function-by-function analysis, he satisfies this requirement if he bases his RFC assessment, at least in part, on a state medical examiner's report containing a function-by-function analysis." *Jones v. Astrue*, No. 3:11-cv-3416-M-BH, 2013 WL 1293900, at * 16 (N.D. Tex. Mar. 7, 2013) (citing *Beck v. Barnhart*, 205 F. App'x 207, 213-14 (5th Cir. 2006)).

In his decision, the ALJ found that Plaintiff had moderate difficulties in concentration, persistence, or pace. *See* Tr. at 15; *see also* 20 C.F.R. §§ 404.1520a(c), 416.920a(c) (describing the special technique using the paragraph B findings to analyze mental impairments). The ALJ explained that Plaintiff indicated that he could manage money and read. *See* Tr. at 15, 250, 259. The ALJ also stated that, at the psychological consultative examination, Plaintiff indicated that he enjoyed reading, writing, and playing computer games. *See id.* at 15, 323. And the ALJ found that Plaintiff displayed good literacy skills, relevant and goal-directed thought processes, average concentration, compromised short-term memory function, good conceptual development, average to low average intelligence, and intact judgment. *See id.* at 15. The ALJ then conducted a function-by-function assessment of the mental limitations in Plaintiff's RFC and ultimately determined that Plaintiff could understand, carry out, and remember detailed, but not complex, tasks and instructions. *See id.* at 16.

At the hearing, the ALJ asked the VE whether a hypothetical individual with the Plaintiff's age, education, and work experience who could perform light exertional

work but is limited to standing or walking up to four hours in an eight-hour day; limited to occasional climing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; precluded from climbing ladders, ropes, and scaffolds; precluded from exposure to extreme heat; limited to occasional interaction with coworkers, supervisors, and the public; and limited to understanding, remembering and carrying detailed, but not complex tasks and instructions could perform Plaintiff's past relevant work or any other work available in the national economy. *See* Tr. at 57. The VE answered that he could not. *See id.*

The ALJ then changed the hypothetical from working at a light exertional level to sedentary work and changed the four-hour stand/walk limitation to that for the standard sedentary level. *See id.* at 58. The VE responded that, assuming those changes, the hypothetical individual could perform jobs that exist in the national economy such as the jobs of document preparer, PC board touch-up screener inspector or tester, and stem mounter. *See id.*

> The ALJ found that Plaintiff had the RFC
>
> to perform sedentary work . . . in that he can lift and/or carry 10 pounds occasionally, lift and/or carry less than 10 pounds frequently, stand/walk for 2 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday. The claimant can occasionally climb ramps and stairs, balancing, stoop, kneel, crouch, and crawl. He should avoid climbing ladders, ropes or scaffolds, and exposure to extreme heat. The claimant has the ability to understand, carryout and remember detailed, but not complex, tasks and instructions. The claimant is limited to no more than occasional contact with coworkers, supervisors, and the general public.

*Id.* at 16.

Plaintiff contends that the ALJ erred because his RFC finding and hypothetical do not "reasonably incorporate" his finding that Plaintiff had moderate deficiencies in concentration, persistence, or pace. Plaintiff relies extensively on a case from the United States Court of Appeals for the Seventh Circuit holding that limiting an RFC and hypothetical to "simple, repetitive work does not necessarily address deficiencies of concentration, persistence or pace." *See* Dkt. No. 18 at 13-15 (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620-21 (7th Cir. 2010)); *see also Eastham v. Comm'r of Soc. Sec. Admin.*, No. 3:10-cv-2001-L, 2012 WL 691893, at *8 (N.D. Tex. Feb. 17, 2012) (same). Plaintiff then draws the conclusion that, if a limitation to simple, repetitive work does not properly address moderate limitations in concentration, persistence or pace, then the ALJ's determination that Plaintiff is limited to detailed, but not complex, tasks and instructions would not do so.

As this Court recently explained in *Grimes v. Berryhill*, the United States Court of Appeals for the Fifth Circuit has not formally adopted this reasoning and only requires the RFC used in the hypothetical to "incorporate reasonably" the claimant's impairments. *See* No. 3:16-cv-3280-BH, 2018 WL 1210533, at *9 (N.D. Tex. Mar. 8, 2018) (citing *Hardman v. Colvin*, 820 F.3d 142, 149 (5th Cir. 2016) (internal citations omitted)). The Fifth Circuit has previously found similar RFC assessments to adequately account for moderate limitations in concentration, persistence, or pace. *See Herrara v. Comm'r of Social Sec.*, 406 F. App'x 899, 905 (5th Cir. 2010) (RFC for unskilled work); *Bordelon v. Astrue*, 281 F. App'x 418, 423 (5th Cir. 2008) (RFC for rare

public interaction, low stress, and simple one- or two-step instructions); *see also Holmes v. Astrue*, No. 3:11-cv-2634-G-BH, 2013 WL 638830, at *16 (N.D. Tex. Jan. 25, 2013) (finding that the ALJ's determination that the claimant was moderately limited in maintaining concentration, persistence, and pace was not inconsistent with his ability to carry out detailed, but not complex instructions).

Even if the Fifth Circuit had adopted the Seventh Circuit's *O'Connor-Spinner* holding, the ALJ's RFC finding and hypothetical in this case are distinguishable because he included more restrictions than simply "non-complex tasks." He also restricted Plaintiff to no more than occasional contact with supervisors, coworkers, and the general public. *See Capman v. Colvin*, 617 F. App'x 575, 579 (7th Cir. 2015) (finding that an RFC for simple, routine tasks that did not require working with the public or in close proximity to others adequately accounted for moderate limitations in concentration, persistence, or pace); *see also Sweeten v. Astrue*, No. 3:11-cv-934-G-BH, 2012 WL 3731081, at *12 (N.D. Tex. Aug. 13, 2012) (finding that, "[b]ecause of the reference to pain and other significant limitations ..., the ALJ's hypothetical contained the requisite alternative phrasing discussed in [*O'Connor-Spinner v. Astrue*]").

The record shows that the ALJ considered and incorporated Plaintiff's moderate limitations in maintaining concentration, persistence, or pace into the RFC assessment and the hypothetical. Substantial evidence in the record supports the ALJ's finding that Plaintiff was limited to understanding, remembering and carrying detailed, but not complex tasks and instructions and avoiding more than occasional contact with

coworkers, supervisors, and the public. *See Taylor v. Colvin*, No. 4:13-cv-534, 2014 WL 4443434, at *6 n.10 (N.D. Tex. Sept. 9, 2014) (collecting cases) (finding that "the ALJ's mental RFC determination limiting [the plaintiff] to the performance of detailed, but not complex, instructions is not contradictory with the ALJ's finding [that the plaintiff] was mildly limited in his activities of daily living and social functioning, and moderately limited in his ability to maintain concentration, persistence, or pace"); *see also Smith v. Colvin*, No. 3:13-cv-1884-N, 2014 WL 1407437, at *5 (N.D. Tex. Mar. 24, 2014) (finding that the "ALJ was not required to expressly include a limitation for concentration, persistence, or pace in her hypothetical to the VE" when the "ALJ considered the limitations in concentration, persistence, or pace when determining Plaintiff's RFC").

Remand is not required on this issue.

II.  The ALJ's RFC "stand/walk" finding is supported by substantial evidence.

The ALJ found that Plaintiff retained the RFC to perform sedentary work, including the ability to "stand/walk for 2 hours in an 8-hour workday." Tr. at 16. Plaintiff contends that the ALJ's conclusion that he could "stand/walk for 2 hours in an 8-hour workday" is not supported by substantial evidence. *See Ripley*, 67 F.3d at 557.

Plaintiff argues that, according to the evidence, he sustained a very serious injury to his lower left leg, including severe tendon and artery lacerations that required surgery. *See* Tr. at 49, 339. Subsequently, he required the use of a prescribed cane to ambulate, as the consulting physical examiner, David Okumbor, M.D., reported. *See*

*id.* at 49, 339. Plaintiff testified that he fell "quite often," even walking on even surfaces. *See id.* at 43, 50. Plaintiff also argues that his testimony is consistent with his prior injuries and Dr. Okumbor's observations. Dr. Okumber reported that Plaintiff was unable to ambulate effectively without use of a cane; Plaintiff had a gait involving dragging of his left foot, which had a left foot drop; Plaintiff could not toe or heel walk; and Plaintiff was unsteady performing tandem walking. *See id.* at 339. The consulting psychiatric examiner, J. Lawrence Muirhead, Ph. D., reported that Plaintiff had an impaired gait. *See id.* at 333. Based on this evidence, Plaintiff argues that being on his feet for two hours would put him at risk for serious injury and that the ALJ failed to fully appreciate the extent of the limitations he had in the ability to stand and/or walk.

In his decision, the ALJ considered Plaintiff's injuries to his chest, left forearm, left thigh, and leg after tripping and falling onto a fish tank in April 2011. *See id.* at 12, 314-23, 368-89. The ALJ stated that Plaintiff underwent ateriorraphy of the left anterior tibial artery at Hunt Regional Medical Center and was then transferred to Baylor Hospital in Dallas for tendon repair surgery on his left leg. *See id.* at 12, 314-23, 368-89. The ALJ further stated that the record reflects no treatment such as physical therapy, injections, or further surgical intervention for the left leg, knees, or spine. *See id.* at 17.

The ALJ also considered Dr. Okumbor's report. *See id.* at 13, 17, 337-39. According to the ALJ, Dr. Okumbor noted that Plaintiff had decreased range of motion of the spine, a left leg scar, bilateral knee tenderness, decreased range of motion, full

motor strength, good coordination, normal reflexes and sensations, no spinal tenderness or spasm, and normal upper and lower extremities. *See id.* at 13, 338-39. Dr. Okumbor opined that Plaintiff was unable to ambulate effectively without a cane for distances over 25 feet because his gait involved dragging the left foot, which had a left foot drop. *See id.* at 13, 339. Dr. Okumbor also noted that Plaintiff had full motor strength, good coordination, normal reflexes and sensation, no spinal tenderness or spasm, and normal upper and lower extremities. Dr. Okumbor diagnosed Plaintiff with, among other things, chronic back pain, mild degenerative arthritis of the lumbar spine, chronic leg pain, and chronic knee pain. *See id.*

Plaintiff also argues that the ALJ failed to address his testimony that he lacked the funds or insurance necessary to obtain treatment or prescription medication. But there is no evidence that Plaintiff sought low cost medical treatment or that he was denied medical care because of his financial condition. There is evidence that Plaintiff was referred to a low cost medical clinic and a low cost dental clinic but no evidence that he ever went to either. *See id.* at 354, 359, 361; *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987) (holding that an inability to afford treatment by itself is insufficient; a claimant must also show that she could not obtain medical treatment from other sources, such as free or low-cost health clinics).

Although Plaintiff relies primarily on his own testimony to support his argument that he cannot stand or walk for two hours, the Court finds that the ALJ's determination that Plaintiff could do so is supported by substantial evidence.

Accordingly, remand is not required on this issue.

III.   The ALJ's Step Five determination is supported by substantial evidence.

After finding that Plaintiff was unable to perform his past relevant work, at Step Five, the ALJ asked the VE two hypothetical questions. *See supra* at 7-8; Tr. at 57-58. The first asked about a hypothetical person who was limited to work at the light exertional level and, among other things, had a combined walk/stand limitation of up to four hours in an eight-hour work day. The second asked about the same hypotheticl person but was limited to sedentary work and had a combined stand/walk limitation of two hours in an eight-hour work day. In response to the first question, the VE testified that there were no jobs that the hypothetical person could perform. In response to the second, the VE testified that there were other jobs that the hypothetical person could perform, such as a document preparer, touch up screen inspector and tester, and stem mounter. The ALJ's RFC finding mirrored the RFC posed in the second hypothetical question and found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. *See id.* at 19.

Plaintiff contends that the ALJ erred in relying on the VE's testimony because the VE's answers to the two hypothetical questions were contradictory. Plaintiff argues that, if a person with a light RFC could perform no jobs in the national economy, then a person further limited to sedentary work could not perform any jobs. According to Plaintiff, the VE's answer to thoe first hypothetical that Plaintiff could not perform any jobs at the light exertional level necessarily included jobs at the sedentary level.

Section 404.1567 provides that, "[a]lthough a sedentary job is defined as one

which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a). Light work "requires a good deal of walking or standing.... If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b). Plaintiff argues that the second hypothetical did not include additional limiting factors but the ALJ changed the combined stand/walk limitation from four to two hours in an eight-hour day.

Plaintiff also argues that, because his RFC limits him to no more than occasional interaction with coworkers, supervisors, and the public, he cannot undergo the training periods or probationary periods of any of the jobs identified by the VE.

But the VE was specifically asked about an individual who was limited to no more than occasional interction with coworkers, supervisors, and the public, and the VE testified as to jobs that Plaintiff could perform with those limitations and further testified that those jobs did not present a conflict with the Dictionary of Occupational Titles. *See id.* at 55-59.

The ALJ properly relied on the VE's testimony and, once the Commissioner met its burden to show that Plaintiff could perform jobs that exist in the national economy, Plaintiff did not prove that he could not perform the alternative work.

Accordingly, remand is not required on this issue.

## Conclusion

The hearing decision is affirmed in all respects.

DATED: September 27, 2018

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE